ELEANOR M. KINCH, APPELLEE AND CROSS-APPELLANT, V. LAWRENCE B. KINCH, APPELLANT AND CROSS-APPELLEE.

95 N. W. 2d 319

Filed March 6, 1959. No. 34426.

*Leo M. Bayer* and *Stubbs & Metz,* for appellant.

*Beatty, Clarke, Murphy & Morgan, Donald W. Peder-son, Frank E. Piccolo,* and *James E. Schneider,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action for divorce by Eleanor M. Kinch, plaintiff, and appellee and cross-appellant, against Lawrence B. Kinch, defendant, and appellant and cross-appellee, instituted by plaintiff in Box Butte County, Nebraska. The defendant filed a cross-petition in which he prayed that a divorce be granted to him. Trial was had and a decree was rendered granting a divorce to plaintiff. By the decree the plaintiff was awarded by way of permanent alimony and property settlement certain personal property and $31,500 payable at the rate of $3,150 annually, the first payment of which became

due on rendition of the decree. The parties have one child whose custody was awarded to the plaintiff except for 3 school vacation months, for which period custody was awarded to the defendant. The decree provided that the defendant should pay to plaintiff $75 a month while the child was in her custody. Plaintiff was awarded an attorney's fee in the amount of $2,000 and expenses in the amount of $918.28. Motion for new trial was duly filed by the defendant and overruled. From the decree and the order overruling the motion for new trial the defendant has appealed. The plaintiff has cross-appealed. The true basis of the appeal is that the plaintiff failed to establish by evidence any cause of action for divorce, but if it should be found that she had established grounds for divorce, the court erred in making its award for alimony and property settlement, for attorney's fees and expenses, and in awarding the custody of the child of the parties to the plaintiff.

The parties were duly married on July 17, 1945, and have been residents of the State of Nebraska ever since they were married. At the time of the commencement of the action, which was June 7, 1956, the plaintiff was residing in Box Butte County, Nebraska, and the defendant was residing in Dawson County, Nebraska. At the time of the commencement of the action the parties were the parents of one living child who was born on October 20, 1950. The child is a boy whose name is Larry Kinch.

As grounds for divorce the plaintiff charged the defendant with cruelty in certain respects. The charge of cruelty however in only one respect requires consideration herein. As to all others the testimony of plaintiff stands alone and without corroboration. Under the statutes and decisions of this court no decree of divorce and of the nullity of a marriage shall be made solely on the declaration, confessions, or admissions of the parties, but the court shall, in all cases, require other satisfactory evidence of the facts alleged in the petition for that pur-

pose. See, § 42-335, R. R. S. 1943; Pestel v. Pestel, 158 Neb. 611, 64 N. W. 2d 299; Smith v. Smith, 160 Neb. 120, 69 N. W. 2d 321; O'Neill v. O'Neill, 164 Neb. 674, 83 N. W. 2d 92.

The single specification contained in plaintiff's petition requiring consideration is that the defendant "charged her in private and in public and in the presence of friends, acquaintances and members of his family with bein (sic) insane, for the purpose of humiliating and disgracing plaintiff, and has outside plaintiff's presence repeatedly told other persons that plaintiff is violently insane and dangerously insane, for the purpose of causing friends and acquaintances to shun her and fear her * * *."

The portion of this charge which declares the acts specified is supported by the testimony of the plaintiff and in some respects by the defendant. Material aspects of this testimony of plaintiff find support in the testimony of others who were witnesses on the trial of the case.

The substantial effect of the testimony of the defendant as to this subject was that he had an honest belief that the plaintiff was in mental and emotional unbalance and that all he ever did was in recognition of this condition and in an effort to restore her to a proper balance.

The parties both testified that the defendant placed plaintiff in the hands of a psychiatrist and one or more psychotherapists for attention but neither of these was produced as a witness and no psychiatrist or psychotherapist gave testimony hypothetically as to the mental or emotional condition of the plaintiff. Two doctors, not psychiatrists, who were witnesses by deposition, testified that she had a psychosis, was emotionally unstable, and was in need of psychiatric treatment. Neither of them however testified that she was insane or required any kind of segregation or confinement. The testimony of the defendant therefore stands alone

as to his claimed reasons for making remarks to others that plaintiff was insane and that she should be⋅ confined or committed to an institution.

A charge by a husband made in good faith that his wife is insane is not ordinarily cruelty but if it is false it may not well be considered otherwise. See, 27 C. J. S., Divorce, § 28, p. 558; Andrews v. Andrews, 120 Cal. 184, 52 P. 298; Schutte v. Schutte, 90 W. Va. 787, 111 S. E. 840; Burns v. Burns, 145 Neb. 213, 15 N. W. 2d 753; Meredith v. Meredith, 148 Neb. 845, 29 N. W. 2d 643; Egbert v. Egbert, 149 Neb. 227, 30 N. W. 2d 669; Beals v. Beals, 152 Neb. 364, 41 N. W. 2d 152. If any such charge was false it could not be considered other than unjustifiable conduct which could well so grievously wound the feelings of the other spouse as to destroy the legitimate ends and objects of matrimony. The cases cited do not directly pass upon the attitude to be taken with regard to unproved charges of insanity but they do relate to any type of grievous charges which have not been proved.

While it may well be said that the verity of the statements made as to plaintiff's mental and emotional condition remain somewhat in doubt, yet it may hardly be said that good faith was an accompaniment at the time at least some of the statements were made. The record discloses that such statements were made to people who could not be calculated to have any interest in the affairs of these parties, or to be in a position to render aid and assistance in meeting the problem, if it existed.

The claim of good faith of the defendant in the making of these statements must be rejected. Accordingly the conclusion arrived at is that this charge of cruelty has been preponderantly sustained by the evidence.

The defendant by his cross-petition, which is of great length, charged the plaintiff with cruelty which he contends amounts to grounds for divorce. The charges are in general supported by the testimony of the defendant. Whether or not this evidence is true is

beside the point in the light of the rule already set forth herein that a divorce may not be granted on the uncorroborated testimony of a party to the action.

The acts and doings of the plaintiff which have been testified to by the defendant, if true, would afford grounds for a divorce in favor of the defendant but they stand without any substantial corroboration. It is true that there is testimony as to acts and doings on the part of the plaintiff which do not merit commendation which have been corroborated, but these, if true, may not fairly be regarded as cruelty sufficient upon which to rest a decree of divorce in favor of the defendant. The court did not err in granting a divorce to plaintiff.

As to the matter of custody of the child in case of divorce of the parties the record fails to disclose that either is an unfit person to have custody. Likewise, insofar as the character and quality of the parents and their desire and purpose to act in the favorable interest of the child and to provide a suitable environment for him is concerned, there is nothing sufficient to justify a refusal to award a division of custody, provided of course such division is made with a proper regard for the child's education.

It is true that the two doctors who gave testimony by deposition testified that in their respective opinions at the time when plaintiff was their patient it would not be in the best interests of the child for her to be in charge of the child's upbringing. Against this however other witnesses who were in a position to observe gave testimony which discounted these opinions. Also the trial judge had opportunity to evaluate her in this respect through her testimony and her manner while she was a witness, and came to the same conclusion as these other witnesses. In this light it is not believed that this court should assume, on the record presented, to say that she is not a fit and proper person to have custody of this child.

The decree rendered by the district court gave the

custody to the plaintiff for 9 months of each year which covered the school year, and it gave the custody to the defendant for the remaining 3 months. This appears proper except that the defendant should have the right of visitation without interference at reasonable times during the 9 months and the plaintiff should have a corresponding right of visitation during the 3 months.

No reason appears to justify any change in the decree relating to custody except, as indicated, provision should be made for visitation.

Coming now to the question of alimony and division of property, it must be said that the record is in such condition that no accurate approach may be had to the amount and value of property which must be considered in the determination of this question. This is true because of the failure of the defendant to make, as it appears, a full and fair disclosure of the extent and value of his property. All of the property to be considered stood in the name of the defendant. The property of the defendant consisted of 240 acres of land in Dawson County, Nebraska; and a considerable amount of farm equipment. Whether there was any money in sources available to the defendant is a matter of conjecture. There is basis for such conjecture that there was in the light of proof of receipt of sums of money without comprehensive evidence as to their disposition. An expert was engaged to appraise the personal property found on the farm before the trial. He did so and testified as to his appraisement. This was not truly determinative of value since it is not shown that this was all of the property owned, or that all of it was owned by the defendant. The defendant failed to furnish in comprehensive detail evidence as to the value of his personal assets. He however admitted a valuation at the time of trial of $18,000. If his valuations were arrived at on the basis used in the depreciation schedule appended to an income tax schedule, which is in evidence, then it becomes obvious that he had a personal property valu-

ation in excess of the valuation given in his testimony.

As pointed out the defendant had 240 acres of land in Dawson County, Nebraska. He testified that its value was $200 an acre, or $48,000. He called a witness who fixed its value at $58,000. On the other hand the plaintiff called a witness who was familiar with the land. its quality, and value. He testified that, in his opinion, all of it except about 5 acres had a value of $450 an acre and the other 5 acres had a value of $350 an acre. From an examination of all of the testimony as to value it becomes quite clear that the valuation testified to by the defendant was grossly inadequate. On the other hand the testimony of plaintiff's witness, particularly in the light of his cross-examination, had the appearance of truth and sincerity.

The testimony of the defendant as to his liabilities was unsatisfactory. In some particulars it appeared to be accurate but in others fragmentary and evasive. Evaluating it in the light of this testimony it is difficult to arrive at a conclusion that the liabilities exceeded $27,000.

The defendant did not choose to go into income experience in the operation of the farm, which would have at least in some measure thrown light on the value of the land. It was shown however that in 1956 the defendant's gross income was $29,507.48. Apparently in that year the defendant was engaged in farming his own farm and an additional 160 acres, and that he did some outside or custom work. Income is not allocated as to source.

We think that the record on its face, without projecting into possibilities which find some support in the evidence, discloses that at the time of trial the defendant had a net estate of at least $100,000.

The plaintiff had no property at the time of the marriage and acquired none thereafter. Little, if any, was added to that which was possessed by the defendant when the parties were married. While there has been

no marked increase in quantity of property the value in dollars has by the operation of economic forces greatly increased.

In the light of all that has been disclosed it becomes necessary to determine what should be awarded to the plaintiff on the dissolution of this marriage. The award made by the district court has already been disclosed herein.

There is no standard whereby to determine the amount of alimony and division of property which shall be awarded a wife in case a divorce is granted. Many statements in regard to this subject appear in the decisions of this court but all that may be said is that they are advisory and cautionary. There has been a wide variance in the results as is readily observable in the reported cases. The following contains the substance of the many statements:

"In determining the question of alimony or division of property as between the parties the court will consider the respective ages of the parties to the marriage; their earning ability; the duration of the marriage; the conduct of each party during the marriage; their station in life, including the social standing, comforts, and luxuries of life which the wife would probably have enjoyed; the circumstances and necessities of each; their health and physical condition; and their financial circumstances as shown by the property they owned at the time of divorce, its value at that time, its income-producing capacity, if any, whether accumulated or acquired before or after the marriage, the manner in which it was acquired, and the contributions each has made thereto. From these elements and all other relevant facts and circumstances, the court will determine the rights of the parties and make an award that is equitable and just." Strasser v. Strasser, 153 Neb. 288, 44 N. W. 2d 508.

In an application of this statement it should be pointed out that the plaintiff is now about 35 years of age and

the defendant is about 14 years older. At the time of the trial the plaintiff was gainfully employed and there was nothing to indicate that she would not be able to continue in gainful employment.

Taking everything into consideration as disclosed by the record the conclusion reached is that the award made by the decree by way of alimony, division of property, and child support is equitable and reasonable and should be sustained.

This court, during the pendency of this appeal, awarded temporary alimony and temporary child support. It is to be understood that for the period covered by that award the defendant shall not be required to also pay the monthly allowances provided by the decree for child support in order to have compliance with the decree as affirmed. These payments shall be in lieu of compliance for that period.

The district court allowed for the attorneys for plaintiff a fee in the amount of $2,000. Expenses in the amount of $918.28 were allowed. The defendant contends that the expense was at least in part improper. The plaintiff contends that the amount allowed for attorney's fees was insufficient. Without analyzing for the opinion what was involved in these respects but having in mind what is apparent in the record it will be stated that the contentions are without substantial merit.

The decree of the district court is therefore affirmed in all respects except one, and in this respect the cause is remanded with directions to modify. That one is that the decree shall be modified by granting the defendant the right of visitation of the child of the parties at reasonable times during the 9 months of each year when the plaintiff has his custody, and a corresponding right of visitation shall be accorded the plaintiff when the defendant shall have custody.

During the pendency of this appeal the attorneys for plaintiff were awarded a temporary attorney's fee in

the amount of $1,000. This award is confirmed and an additional fee of $2,000 is allowed for services on appeal. All costs are taxed to the defendant.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.