GEORGIA LOUKOTA, APPELLANT AND CROSS-APPELLEE, V. JAMES ERNEST LOUKOTA, APPELLEE AND CROSS-APPELLANT.

128 N. W. 2d 809

Filed June 12, 1964. No. 35645.

Keenan & Walker, for appellant.

Herman Ginsburg and Roderick R. Perry, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

YEAGER, J.

This is an action for divorce by Georgia Loukota, plaintiff and appellant, from James Ernest Loukota, defendant and appellee. The case was tried in the district court for Fillmore County, Nebraska. At the conclusion of the trial a decree of divorce was granted to the plaintiff which decree adjudicated the rights of the parties as to alimony and division of property. The plaintiff filed a motion for new trial which was overruled. From the decree and the order overruling the motion for new trial the plaintiff has appealed.

The assignments of error as grounds for reversal are that the court erred in overruling the motion for new trial and erred in dividing the property of the parties and in failing to award a proper amount of property and

alimony to the plaintiff. There is no contention by either party that the court erred in granting a divorce to plaintiff from the defendant.

The defendant by his brief presented a cross-appeal in which he contended that the court erred in awarding an excessive amount to plaintiff as alimony and in division of property and property rights, and erroneously admitted hearsay testimony on behalf of plaintiff. No substantial reliance in argument is predicated on the assignment relating to hearsay.

The only real question presented by this appeal is that of whether a sufficient award was made in favor of plaintiff for alimony and division of property.

This court has declared generally the attitude which should control in situations such as this in Schwarck v. Schwarck, 175 Neb. 560, 122 N. W. 2d 489, as follows:

"In determining the question of alimony or division of property as between the parties the court, in exercising its sound discretion, will consider the respective ages of the parties to the marriage; their earning ability; the duration of the marriage and the conduct of each during the marriage; their station in life, including the social standing, comforts, and luxuries of life which the wife would probably have enjoyed; the circumstances and necessities of each; their health and physical condition; and their financial circumstances as shown by the property they owned at the time of the divorce, its value at that time, its income-producing capacity, if any, whether accumulated or acquired before or after the marriage, the manner in which it was acquired, and the contributions each has made thereto, and, from all the relevant facts and circumstances relating thereto, determine the rights of the parties and make an award that is equitable and just.

"This rule provides no mathematical formula by which an alimony award can be exactly determined. Generally speaking, awards of this court in cases of this kind vary from one-third to one-half of the value of the prop-

erty, depending on the facts and circumstances of the particular case." See, also, Kinch v. Kinch, 168 Neb. 110, 95 N. W. 2d 319; Kramer v. Kramer, 171 Neb. 128, 105 N. W. 2d 741; Matson v. Matson, 175 Neb. 60, 120 N. W. 2d 364.

The parties were married in Hastings, Nebraska, on September 25, 1947. The plaintiff was 28 years of age at the time and the defendant was 31. They lived at Hastings for 4 years during which time the defendant attended Hastings College where he obtained a Bachelor of Science degree. During this period the plaintiff worked at various jobs and devoted her earnings to the living expenses of the parties. In 1952 the defendant entered Nebraska University Medical College from which he was graduated in June of 1956. During all of this time the plaintiff worked and contributed her earnings to the expenses of the parties. In April or May of 1957 the defendant began the practice of medicine in Exeter, Nebraska. In August of 1958 the defendant without good cause deserted and abandoned the plaintiff and has since continued his abandonment. This abandonment has been proved and the defendant does not contend otherwise.

The bill of exceptions which contains the evidence considered by the trial court contains the record of a pretrial conference which was admitted without objection. In it is included evidence as to the financial and economic condition of the parties from the commencement of the marriage relation down to the date of the trial. It cannot be regarded in all respects as accurate or complete. It is in such condition that the district court was and this court is required in large measure to depend upon inferences from testimony other than clearly established facts upon which to make a decision and determination. An illustration of this was the failure of the defendant, although present at the trial, to testify as a witness on his own behalf concerning the financial and economical aspects which were matters of

dispute on the trial. As a witness for the plaintiff he gave some testimony.

As to property and assets at the time of the marriage the defendant was the owner of a quarter section of land which had been purchased for $8,000. The time of purchase was not disclosed. There is nothing to indicate that at that time he was possessed of any other property or of any money. This land was of the agreed value of $20,000 at the time of the divorce. This was the limit of assets which the defendant brought with him into the marriage relationship. The plaintiff brought to the relationship $1,700 which was devoted to the uses of the parties. The plaintiff, after the marriage, inherited $6,000. The date of this does not appear. This was deposited in a savings account of the plaintiff and in probability the earnings from this were allowed to accumulate and be added to it. This appears to be the total of the assets which the parties brought to the marriage.

At the time the divorce was granted property which the parties had at the time of the marriage with additions thereto with increases in value were described and found to be about as follows: Deposits of plaintiff $15,000; Saline County land, title in the defendant, $20,000; Fillmore County land in joint tenancy, $24,000; office equipment of defendant, $6.000; house and lots in joint tenancy, $4,000; automobile of the defendant, $2,800; automobile of plaintiff, $250; house of defendant in Florida, $6,000; land of defendant in Florida, $4,400; and furniture in the home of the parties, $500.

By the decree the plaintiff on property division was allowed to retain the $15,000 building and loan deposits, and was awarded title to the Fillmore County quarter section of land and the house and lots held in joint tenancy. In addition she was granted $4,000 and a lien was declared against the land in Saline County to secure the payment of this amount. An attorney's fee was taxed against the defendant in the amount of $1,500. The costs were taxed to the defendant.

This presents a view of the financial and economic situation at the beginning and the decreed end of this marriage relationship, but what happened in between is of vital concern in the determination of whether or not the division of property is fair and equitable.

In quotation from Schwarck v. Schwarck, *supra,* it is pointed out there is no mathematical rule which is applicable in a situation of this kind, and that awards generally range from one-third to one-half of the property, but that the determination should depend on the facts of the particular case. Under this pronouncement and the facts and circumstances as disclosed, that portion of the quoted language relating to accumulation of the property and the conduct of the parties during the period of accumulation and thereafter should be considered as having great significance in the approach to the question here involved.

It is clear that over the years from the marriage to the date of the separation, the financial situation of the parties became greatly improved. As to what the defendant contributed thereto has not been disclosed. The defendant may have had some earnings from employment but there is no reliable information in relation thereto. In likelihood income from the two farms represented in great measure the economic improvement in the situation of the parties, but regardless of what may have been the reason, all of the facts as to this one thing is certain and that is that for at least 8 years the defendant was without personal productive capacity except at brief intervals, during which 8 years and beyond to the date of separation, the plaintiff, except for brief intervals, was gainfully employed and the income from her employment was devoted to the marital and financial interests of the parties. It was during this period that the Fillmore County land, the home, the lots, and the medical office equipment were acquired. It was during this period that $10,796.18 was accumulated in

three savings accounts, which the defendant withdrew and appropriated to his own purposes.

Over this period the plaintiff got nothing beyond what the parties used in the conduct of their affairs as husband and wife, except an addition of about $9,000 to the $6,000 which she retained as her property after the marriage. Obviously included in this increase was the accumulated income from the $6,000.

After the separation and up to the time of trial the defendant contributed to plaintiff only $1,750, and in addition to the money withdrawn from the building and loan accounts he received as rent for the two farms an amount of $14,275.40, no part of which was turned over to the plaintiff.

It is pointed out here that it does not appear that on division of the property anything of benefit was extended to the plaintiff on account of the increase in value of the Saline County farm which cost $8,000 before the marriage and was regarded as of the value of $20,000 at the time of the divorce. There is no evidence which directly accounts for the difference except a normal increase in value, a part of which at least in probability came about after the marriage of the parties.

The division of property made by the decree is in ultimate terms clear and specific but the mathematical and factual processes employed to reach it are not clear and definite. By the decree the plaintiff was awarded out of the mutual property rights of the parties the quarter section of land in Fillmore County, Nebraska, the two lots in the Original Town of Exeter, Nebraska, the four lots in Gilbert's First Addition to Exeter, Nebraska, the household goods, plaintiff's personal belongings, and $4,000 with a lien in that amount on the land of defendant to guarantee the payment of the $4,000. The property which remained as the property of the defendant was not described. The property of neither party was evaluated in the decree.

From the record and the briefs it becomes reasonably

clear that by the decree the plaintiff was allowed to retain the $6,000 which stood in her name from the time she received it, and about $15,000 which stood in her name at the time of the divorce. She was awarded the Fillmore County land of the value of $24,000, the house and lots in Exeter of the value of $4,000 which were jointly owned by the parties; and an automobile of the value of $250; household equipment of the value of $500; and alimony in the amount of $4,000.

The defendant was allowed to retain the Saline County land of the value of $20,000, his office equipment of the value of $6,000, his automobile of the value of $2,800, a house in Florida of the value of $6,000, land in Florida of the value of $4,400, and accounts in foreign banks in the amount of $3,200.

In addition to this it is pointed out that after the separation the defendant collected the rents from the two farms in the amount of $14,275.40, and removed from building and loan deposits which had accumulated before the separation $10,796.18.

In addition to this it appears that after the separation the defendant engaged in the practice of his profession in a foreign state. There is no authentic information as to his income there, but there is sufficient to warrant an inference that it was much in excess of that of the plaintiff over the 4-year period from which he contributed to her only $1,750.

There is a suggestion that he has an indebtedness of $17,000 and that he has suffered losses in stock or securities transactions, and accordingly these things should be considered in the determination to be made herein. In response to this, the comment here is made that in the record the defendant has refused and failed to disclose information on this subject. Further if what is intimated is true and the defendant, after the separation brought about by the wrongful acts of the defendant, sustained losses, should that be regarded as a reason for causing the plaintiff, after her many years of

helpfulness, to be called upon to share these losses? Reason dictates that she should not.

On the evidence analyzed and computations made on a purely financial basis it might reasonably be said that the division made by the district court was justified. Under the circumstances of this case such a division in the light of what has been disclosed could not be regarded as just and equitable. This would be a flagrant disregard of the true character, qualities, and extent of the contributions made by the parties up to the separation and even thereafter up to the time of the divorce. No one can tell just where the line should be drawn to accomplish this purpose, but under the circumstances disclosed, it cannot be said that it should be drawn unfavorably to the plaintiff.

This is one of the cases wherein the determination should not be made, as has been pointed out by the cases cited, on the basis of any mathematical formula, but upon, as has been pointed out in these cases, the duration of the marriage; the conduct of the parties during the marriage; the luxuries of life which would probably have been enjoyed; the circumstances and necessities of each; their financial circumstances; the property at the time of the divorce together with its income-producing value; whether it was accumulated or acquired before or after the marriage, and the manner of acquisition; and the contributions each has made thereto.

The manner of acquisition and accumulation of property has been set out, it is thought, sufficiently, as well as value at the time the divorce was granted. As to the personal conduct of the parties prior to the separation, but little has been disclosed. No complaint has been made concerning the personal conduct of the defendant until a short time before he deserted and abandoned the plaintiff, as the record discloses, because of an affair of his with another woman.

As to the conduct of the plaintiff, she became the wife of defendant in 1947, and all of the time there-

after until the separation about 11 years thereafter she worked, except for brief intervals and devoted her income to the interests of the parties in their marriage relationship. During that time defendant went to college 4 years and an additional 4 years to medical college from which he was graduated, and thereafter engaged in the practice of medicine. A little more than a year later he departed and has never returned or offered to return to the plaintiff, and in the years since has contributed $1,750, as has been pointed out, to the interests of the plaintiff.

In this wise the things in which she had an interest with the defendant, after 11 years, were wiped out and rendered for nought. After all of her efforts, through no fault of her own she became barred from "the social standing, comforts, and luxuries of life which" she as a wife would probably have enjoyed, and which she had earned.

In the light of what has been gleaned from the record here the award made by the district court is insufficient to constitute an equitable division of property and award of alimony in this case. Justice, equity, and reasonable equality of division require that it be increased.

The judgment of the district court is reversed and the cause remanded with directions that a judgment be rendered with its terms the same as those contained in the original judgment except that the portion granting plaintiff a recovery of $4,000 shall be increased to $10,000. A fee of $1,000 is allowed for the attorneys for the plaintiff for services in this court.

REVERSED AND REMANDED WITH DIRECTIONS.